No. 25-1474

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

CHELSEY GOSSE
APPELLANT

v.

TRANSWORLD SYSTEMS, INC.

U.S. BANK, N.A.

RATCHFORD LAW GROUP, P.C.

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3

APPELLEES

_____

ON APPEAL FROM THE ORDER DATED FEBRUARY 7, 2025, OF THE
UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
PENNSYLVANIA AT DOCKET NO. 3:20-cv-01446-KMN
DISMISSING THE CASE

_____

**APPELLANT'S BRIEF**

_____

Robert P. Cocco, Esq.
Robert P. Cocco, P.C.
Attorney I.D. No. 61907
1500 Walnut St., Ste. 900
Philadelphia, PA 19102
(215) 351-0200
bob.cocco@phillyconsumerlaw.com
COUNSEL FOR APPELLANT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………………………i

TABLE OF AUTHORITIES……………...……………………………...……………..iv

JURJSDICTIONAL STATEMENT……………………...…………………………1

STATEMENT OF THE ISSUES ……...……………...……………...……………..2

STATEMENT OF THE CASE...…………...……………...……………...……4

    I. Statement of Facts……………...……………...……………...……………7

    II. Procedural History……………...……………...…………...………15

    III. Rulings Presented for Review……………...…………………………..20

SUMMARY OF THE ARGUMENT……………...……………………………21

ARGUMENT……………...……………...……………………………………23

    I.  Standard of Review...……………...……………...………………..23

    II.  A Reasonable Jury Could Find Appellees Lacked Probable Cause and Acted with Gross Negligence in Initiating the Underlying Action …….24

        A. The Governing Standard: The Elements of the Dragonetti Act and the Contested Issues on Appeal……………...…………………………..24

          1.  A Reasonable Jury Could Find Appellees Lacked Probable Cause to file a Collection Action Against Ms. Gosse…………………..25

          2.  Alternatively, a Reasonable Jury Could Find Appellees Acted with Gross Negligence……………...……………...……………………..26

    3.  The Record Compels an Inference That Appellees Pursued the Action for an Improper Purpose…………………………………27

B. The District Court Committed Reversible Error by Disregarding Genuine Disputes of Material Fact and Impermissibly Weighing Evidence………..………...……………..………...…………… 28

    1.   The Court Ignored Overwhelming Evidence That Appellees Were on Express Notice of Their Systemic Evidentiary Flaws………..………...…………………………...…………… 29

C. The Court Improperly Resolved Factual Disputes Regarding the Inadmissible "Roster" Offered as Proof of Ownership of Gosse's loan……………...……………………...…………..…………….30

D. The District Court Erred in Not Finding a Dispute of Material Fact and a Legal Dispute Regarding Hearsay and Admissibility………..31

    1.   Overview of the R&R regarding the Dragonetti Claim………31

    2.   The District Court Abused Its Discretion by Authenticating the Roster When It Ignored Uncontroverted Evidence That the Underlying Source Database Was Irrevocably Lost…………34

    3.   The District Court Abused Its Discretion by Admitting the Roster as a Business Record Where Appellees Failed to Authenticate Its Origin or Establish Its Reliability…………...…………… 37

4.      A reasonable jury could find Appellees acted without Probable Cause or with Gross Negligence to establish liability under the Dragonetti Act…………...………………………..............42

5.      The R&R Should have Inferred an Improper Purpose under the Dragonetti Act. …….……...………………………………43

E.  The District Court Erred by Dismissing Appellant's Conspiracy Claims…………….....…………….…………...…………… 46

F.  The Dismissal of the FDCPA Claim Should Be Vacated…………….....……………………...………………46

III.    Conclusion…………...…………… …………….....…………… 47

COMBINED CERTIFICATES OF COMPLIANCE…………...……………..47

CERTIFICATE OF SERVICE……………………...……………...…………… 48

# TABLE OF AUTHORITIES

**Cases**

*AAMCO Transmissions, Inc. v. Baker*, 591 F. Supp. 2d 788, 794 (E.D. Pa. 2008)………..……38

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)....21

*Bannar v. Miller*, 701 A.2d 242, 248 (Pa. Super. Ct. 1997) ……………………….…….…....23

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993)………………………….……….……21

*Broadwater v. Sentner*, 725 A.2d 779, 784 (Pa. Super. Ct. 1999)……………………….…....24

*Browne v. National Collegiate Student Loan Trust,* No. 23-2017 (3rd Cir. August 1, 2023)…......30

*Brown  v. Halpern*, 2018 PA Super 320, 2018 Pa. Super. LEXIS 1268 (Pa. Super. Ct. 2018)…42

*Catania v. Hanover Insurance Co.*, 566 A.2d 885, 888 (Pa. Super. Ct. 1989)…….…………....23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)...……....20

*Clemens v. West Milton State Bank (In re Clemens)*, 197 B.R. 779, 794-795, 1996 Bankr. LEXIS 761, *43-44 (M.D. Pa. 1996)...…………………..……………………..…………….42

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599 (3d Cir. 2024) ……………....………………………….……...…………………....……19

*Consumer Fin. Prot. Bureau v. Pennsylvania Higher Educ. Assistance Agency*, 2024 WL 4367926 (M.D. Pa. Oct. 1, 2024)………..……………………...………………….....……19

*Dietrich Industries, Inc. v. Abrams*, 309 Pa. Super. 202, 211, 455 A.2d 119, 124 (1982))…..….42

*Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila.*, 397 Pa. 274, 154 A.2d 585, 587 (Pa. 1959) ……………....…………………....……………………...……..…..…42

*Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016)…......28

*Gen. Refractories v. Fireman's Fund Ins.*, 337 F.3d 297 (3d Cir. 2003)…………….……….....25

*Gentzler v. Atlee*, 660 A.2d 1378, 1385 (Pa. Super. Ct. 1995) ………………....….……..40

iv

*In re Nat'l Collegiate Student Loan Trusts Litig.*, 251 A.3d 116, 174 (Del. Ch. 2020) …………20

*Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa. Super. Ct. 2001)..………………………………...23

*Kraft v. Downey*, 68 A.3d 329, 336-37 (Pa. Super. 2013) ……………………......……….24

*Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 543, 543 (D. Md. 2007)..…………………..………35

*McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1026 (Pa. 1987) ………………….……..……...25

*Nat'l Collegiate Master Student Loan Trust I, et al. v. U.S. Bank Nat'l Assoc., et al.*, No. 2018-0167 (Del. Ch. June 15, 2018) ……………….....……………………....…………….……..8

*Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943)..………………………………….…...............38

*Schwartz v. OneWest Bank, FSB*, 614 Fed. Appx. 80, 84 (3d Cir. June 5, 2015)…………………42

*Stelwagon Mfg. Co. v. Tarmac Roofing Sys.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)…………29

*Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir. 1992) ………………......……21

*United States v. Pelullo*, 964 F.2d 193 (3d Cir. 1992) …………………......…………….……..……31

*U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002) …………………......…21

*U.S. Bank, N.A. v. Rosenberg*, 2013 U.S. Dist. LEXIS 178705, \*16, Civ. Act. No. 12-723 (E.D. Pa. December 20, 2013) ……………….…...……………………………....……………………….41

*Winner Logistics, Inc. v. Labor & Logistics, Inc.*, 23 Pa. D. & C.5th 463, 2011 Phila. Ct. Com. Pl. LEXIS 67 (Pa. C.P. Mar. 25, 2011), aff'd, 40 A.3d 204, 2011 Pa. Super. LEXIS 5954 (Pa. Super. Ct. 2011), aff'd, 40 A.3d 204, 2011 Pa. Super. LEXIS 5913 (Pa. Super. Ct. 2011)..…………….…...42

**Statutes**

28 U.S.C. § 1291………………….…………………………………………….……….…...…1

UTPCPL, 73 P.S. §§ 201-1 *et seq.* ………………….…………………………………...……....14

42 Pa. Cons. Stat. § 8351(a)…………….……………………………………….…………….......2

42 Pa. C.S. § 8352……………….…………………………………………………….…………..22

42 Pa. C.S. § 8352(2)……….…………….………………………………………………………...22

42 Pa. C.S. § 8352(3)………………………………………………………….……………..……23

42 Pa. C.S. § 8354(3)……………………………………………………………………………….22

**Rules**

F.R.A.P. 4(a)(1)(A)……………………………………………………………………….……..…1

Fed. R. Civ.P. 53…..………………………………………………….……..……………………24

Fed. R. Civ. P. 56(c)…..………………………………………………………………………...…20

Fed. R. Civ. P. 56(c)(2)..………………………………………………………….……………… 28

Fed. R. Evid. 602……………………………………...………………………………………………32

Fed. R. Evid. 803(6)…………………………………………………………………………………..32

Fed. R. Evid. 803(6)(A)-(C)…………………………………………………………………...…35

Fed. R. Evid. 803(6)(E)..…………………………………………………………………………...…36

Fed. R. Evid. 901…………………………………………….………………………………………...…37

**Secondary Authority**

Black's Law Dictionary 1057 (7th ed. 1999) …………….…..…………..……..…………………24

https://ag.ny.gov/sites/default/files/09.11.2020_tsi_aod_final.pdf…………………….…..……..8

https://www.mass.gov/doc/transworld-systems-aod/download. ……………….......…..……..8

https://ag.ny.gov/sites/default/files/09.11.2020_tsi_aod_final.pdf. …………….……………..8

https://ag.ny.gov/sites/default/files/09.11.2020_tsi_aod_final.pdf…………….…...……..……..8

https://www.mass.gov/doc/transworld-systems-aod/download…………………........….……..8

# JURISDICTIONAL STATEMENT

The bases for the District Court's subject matter jurisdiction were:

1) federal question jurisdiction pursuant to 28 U.S.C. §1331 (Appellees' alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"));

2) supplemental jurisdiction pursuant to 28 U.S.C. §1367 (state law claims related to the federal claim, including violation of 42 Pa. C.S. §§ 8351, et seq. (the "Dragonetti Act"), and a common law claim of civil conspiracy amongst the Appellees, forming part of the same case or controversy under Article III of the United States Constitution).

The basis for appellate jurisdiction is appeal from final judgment pursuant to 28 U.S.C. § 1291 and F.R.A.P. 4(a)(1)(A). The District Court granted summary judgment in favor of Appellees and against Appellant on the Dragonetti and Civil Conspiracy Counts on February 7, 2025, ECF 223; JA3466-JA 3470. Then the parties consented to dismiss the remaining FDCPA Count to dismiss the case entirely on February 28, 2025 (ECF 227; JA3477-JA3482) to permit this appeal because the summary judgment in favor of Appellees also affected the validity of the Appellant's FDCPA claim because it held that Appellees had rights to Appellant's loan. The District Court granted the motion and entered judgment on March 3, 2025. (ECF 228 and 229; JA3484 and JA3485). Appellant filed a Notice of Appeal on March 16, 2025 (ECF 230; JA3487-JA3488).

## STATEMENT OF THE ISSUES

1) Whether the District Court committed reversible error by granting summary judgment on Appellant's Dragonetti Act claim where genuine disputes of material fact exist regarding Appellees—a sophisticated, high-volume debt collection enterprise—initiating the underlying state-court suit against Appellant, Chelsey Gosse, "in a grossly negligent manner or without probable cause." 42 Pa. Cons. Stat. § 8351(a). More specifically, the issue is whether the fact record herein contains fatal and dispositive contradictions in Appellees' own primary documentary evidence and witness testimony that it owned the debt at issue that the District Court disregarded and/or improperly weighed leading to an improper finding that such evidence was a "business record" rather than a litigation-generated spreadsheet without any historic origin.

2) Whether the District Court committed reversible error by granting summary judgment on Appellant's Dragonetti Act claim where genuine disputes of material fact exist as to Appellees being grossly negligent and lacking probable cause to file the state collection action based on the record showing Appellees abandoned a $37,000 claim in the state collection action upon being challenged by Plaintiff to prove ownership?

3) Whether the District Court committed reversible error by granting summary judgment on Appellant's Dragonetti Act claim where a reasonable jury could find that Appellees acted with gross negligence and without probable cause under 42 Pa. Cons. Stat. § 8351(a) by initiating a state collection lawsuit despite notice from a CFPB consent order and investor litigation that their internal records for proving loan ownership were systemically unreliable?

4) Whether the District Court committed reversible error by granting summary judgment on Appellant's Dragonetti Act claim where genuine disputes of material fact exist as to Appellees being grossly negligent and lacking probable cause to file the state collection action based on the record showing contradictory evidence from Appellees and third party testimony regarding the origin of their own records including the document Appellees proffered as Schedule 1?

5) Whether the District Court violated the fundamental tenets of summary judgment under *Anderson v. Liberty Lobby, Inc.* by resolving a direct and irreconcilable conflict between sworn testimony from Appellees' own witnesses and testimony from third parties regarding the provenance of the dispositive evidence of loan ownership, thereby improperly weighing evidence and making credibility determinations reserved for a jury?

## <u>STATEMENT OF THE CASE</u>

The Defendants-Appellees National Collegiate Student Loan Trust 2007-3 ("Trust"), Transworld Systems Inc. ("TSI"), Ratchford Law Group, P.C. ("RLG"), U.S. Bank, N.A. (USB), and National Collegiate Loan Trust 2007-3 ("the Trust") (hereinafter collectively "Appellees" or "Defendants") all claim that the Trust is an assignee of a student loan they are entitled to collect from Plaintiff-Appellant Chelsey Gosse (hereinafter "Gosse" or "Appellant"). An action was previously filed in the name of the Trust against Gosse in state court to collect over $37,000. Gosse moved to dismiss the case because it was not supported by sufficient evidence to show that the Trust had the right to collect the loan. The Trust was given leave to amend its complaint but did not respond and the case was dismissed. In short, the Appellees walked away from $37,000 they claimed was owed to the Trust. Gosse sued Appellees for their various roles in filing a collection litigation against her alleging Appellees' gross negligence, lack of probable cause, and improper purpose in doing so because they knew they were filing the litigation based on systemically flawed evidence of ownership of Appellant's debt and those similarly situated to Plaintiff. Gosse also asserted that the Appellees had violated the FDCPA by asserting claims that it did not have against Gosse.

Assignees sue every day in Courts. Assignees come to court with documents to show an assignment. It is not a difficult or complex task. Here, Appellees failed this task because they do not possess a critical part of the assignment, the Schedule 1 identifying the loans transferred to the Appellee Trust. The crux of Appellant's argument is that Appellees have

not produced the original authenticated version of a single document that is the indispensable link in the chain of title proving ownership of plaintiff's debt: "Schedule 1" to Pooling Supplements that allegedly transferred loans to fifteen National Collegiate Student Loan Trusts in the time frame 2007 - 2008. Only Schedule 1 shows what loans were transferred. The New York Attorney General stated that "[t]he schedule listing the individual student loans transferred to the Trust in question is essential to establishing that the Trust is the owner of the loan."

Appellant contended below that the Appellees never had Schedule 1 which was in the possession of The Education Resource Institute ("TERI") before it was lost. Appellant submitted transcripts from TERI's chapter 11 bankruptcy proceeding wherein TERI's lawyers represented to the bankruptcy court that it was lost. Appellees tried to avoid conceding their lack of possession of Schedule 1 by claiming an electronic spreadsheet document titled "Roster" could serve as a replacement for Schedule 1. Based on testimony elicited from the Appellees and their third-party Motion affiants, Appellant contended that the roster was prepared for litigation from indeterminate sources long after the Schedule 1 was lost. Appellant also showed that the claims about the roster document's origination were circular with two affiants claiming the other had the information and Appellee USB stating that the Roster lacked information from Schedule 1 and therefore could not be that document. Appellant's contention was also supported by various government actions, one of which resulted in Appellee collector TSI agreeing to desist from using certain documents to make unsupported claims of ownership of the loans by the Trusts. Additionally, several

affidavits submitted by Appellees alleged personal knowledge of the loan transfers to the Trusts were found not to be based on personal knowledge because the events described preceded the affiant's involvement with the Trusts. The District Court did not simply disregard all of Appellant's arguments about the integrity of the Roster document, it held that the parties agreed that the original Schedule 1 had been produced by Appellees in the form of the Roster. Appellant did not agree that the Roster was Schedule 1. The District Court granted summary judgment in favor of the Appellees.

Appellant submits that whether Appellees can or cannot cobble together an argument to show what information was in Schedule 1 without possessing the original Schedule 1, is a fact issue that need to be resolved by the fact finder and not resolved by the Court through summary judgment. Therefore, the grant of summary judgment was in error and should be reversed.

The summary judgment ruling on the Dragonetti claim also led to dismissal of the Fair Debt Collection Practices Act ("FDCPA"). Short of rearguing the District Court's ruling on ownership of Appellant's loan decided by its summary judgment ruling, the FDCPA claim was foreordained to be granted under the Magistrate's same disputed analysis. If this Court reverses the grant of summary judgment, the dismissal of the FDCPA claim should therefore also be vacated for further proceedings.

# I. **Statement of Facts**

In 2019, Appellees, acting through Appellee Ratchford Law Group, P.C., sued Appellant Ms. Gosse in the Court of Common Pleas of Lehigh County, Pennsylvania seeking to collect a defaulted student loan debt of $37,394.38. (Pl.'s Counter-Statement of Material Facts ("CSMF") at ¶ 1; JA2815, see also ECF 184-1, Amended Ex. A; JA3537-3538)[1]. Represented by counsel, she filed preliminary objections directly challenging the Defendant Trust's standing to sue. (ECF 180-1; JA2815; see also ECF 184-1, Ex. B; JA3559-3571). The objection was precise: the Trust had failed to attach any proof that it owned her specific loan and, therefore, possessed no legal right to sue her for it. (Pl.'s CSMF, ECF No. 188-1, ¶ 2; JA2916, see also ECF 184-1, Amended Ex. B; JA3561-JA3563). The state court entered an Order sustained Ms. Gosse's objections and dismissed the complaint. (Pl.'s CSMF, ECF 188-1, ¶ 3; JA2916-2917; see also ECF 184-1, Amended Ex. C; JA3573-JA3574).

Prior to the state collection action being filed in 2019, Appellees' documentation and collection practices were the subject of a multi-year investigation by the Consumer Financial Protection Bureau (CFPB), which culminated in a 2017 Consent Order addressing widespread failures in proving loan ownership. (Pls.' Br. in Opp'n to Summ. J., ECF 183, at 37 (citing *Transworld Systems Inc.*, CFPB No. 2017-CFPB-0018); JA2904).

---

[1] The NCSLT Trusts have no employees or management and must rely upon their affiliates—including Appellees Transworld, U.S. Bank, and RLG—to put any collection efforts into action. (Appellant's First Amended Complaint ("FAC") (ECF 67 at p. 10; JA13).

The attorney generals of New York and Massachusetts had also filed enforcement actions. (ECF 183, p. 18 at FN 5[2]; JA2889). The New York Attorney General specifically addressed the use of the roster that it asserted were prepared for litigation. Pl.'s Amended Brief in Opposition to Defendants' Renewed Summary Judgment Motion (ECF 189; JA 3053). The New York Attorney General stated that "[t]he schedule listing the individual student loans transferred to the Trust in question is essential to establishing that the Trust is the owner of the loan."[3] (ECF 183, p. 18 at FN 5[4]; JA2889) Furthermore, the Trusts' own investors had previously sued Appellees in the Delaware Court of Chancery, alleging misrepresentations regarding loan ownership. (See Pl.'s Objs. to R&R, ECF No. 213-1, at 9 (citing *Nat'l Collegiate Master Student Loan Trust I, et al. v. U.S. Bank Nat'l Assoc., et al.*, No. 2018-0167 (Del. Ch. June 15, 2018)); JA3388).

According to the Amended and Restated Loan Origination Agreement between The Education Resources Institute, Inc. ("TERI") and Bank One. TERI would gather the data concerning loans made in the name of Bank One. (ECF 188-1, pg. 2; JA2917). Regarding loans originated by TERI as private label loans under the names and charters of banks like Bank One's loan to Plaintiff, TERI, at one time had two loan databases derived from its loan guarantor duties:

---

[2] New York Attorney General at https://ag.ny.gov/sites/default/files/09.11.2020_tsi_aod_final.pdf and Massachusetts Attorney General at https://www.mass.gov/doc/transworld-systems-aod/download.
[3] https://ag.ny.gov/sites/default/files/09.11.2020_tsi_aod_final.pdf at p. 7-8.
[4] New York Attorney General at https://ag.ny.gov/sites/default/files/09.11.2020_tsi_aod_final.pdf and Massachusetts Attorney General at https://www.mass.gov/doc/transworld-systems-aod/download

a. TERI's "Loan Database" containing unredacted information about the loans, lenders, and borrowers, and;

b. A redacted version of that database called both the "Delivered Database" and "Initial Loan Database".

(*Id*., pp. 2- 3; JA2917-JA2918).

Thus, TERI retained ownership of the unredacted Loan Database while the First Marblehead entities only had access to the redacted "Delivered Database"/ "Initial Loan Database". (*Id*., pg. 4; JA 2919).

Thereafter, in 2010 regarding the foregoing loan databases, FMC, FMER, and FMER's wholly owned subsidiary, TERI Marketing Services, Inc. ("TMSI")[5], engaged in adversary litigation with TERI in TERI's bankruptcy. (*Id*., pp. 4 – 5; JA 2919-2920). The adversary bankruptcy hearing transcript underlying the Court's foregoing opinion discusses TERI's loss of its original database which then caused it to rely on FMER's redacted information to rebuild it but TERI's unredacted Loan Database was not available to FMC/FMER. *Id*., pp. 5 – 6; JA2920-JA2921. Because FMER and FMC did not store or otherwise have full access to the Loan Database from TERI, they allegedly added to the Delivered Database redacted data information from unidentified and therefore unknown sources to fill in the missing information. (*Id*., pg. 7; JA2922). None of the Defendants or their three (3) Motion affiants, TSI's Bradley Luke, FMC/Cognition's Jens Meyer and

---

[5] TMSI is described as FMER's wholly owned subsidiary in the Marketing Services Agreement, **Ex. G**; see ECF 184-1 at pg. 1, Marketing Services Agreement; JA3647.

PHEAA's Jennifer Wilbert, could state that they are familiar with TERI's record keeping practices, (*Id*., pg. 9; JA2924). The bankruptcy adversary confirmed that TERI's Loan Database was lost and neither TERI nor anyone else kept or maintained it, *Id*. Pp. 7 – 8; JA2922-JA2923. Servicer PHEAA admitted it did not receive TERI's database or records in statements it made to a consulting firm hired to perform a servicing review, (*Id*., pg. 9; JA 2924).

While the Appellant contended that the bankruptcy adversary transcript *confirmed* that TERI's Loan Database was lost and therefore the Appellees did not possess Schedule 1 to the Pool Supplement listing the loans allegedly transferred to it, at a minimum, the District Court should have found that the bankruptcy adversary transcript created a genuine issue of material issue of fact as to whether the defendant Trust did or could possess Schedule 1 to the Pool Supplement.

Schedule 1 was critical to any claim of ownership by the Appellee Trust. Only Schedule 1 shows what loans were transferred. (Pl.'s Counterstatement of Material Facts, ECF No. 188-1, ¶¶ 22-23; JA2962-JA2963). The Appellee Trust claims an interest in Gosse's loan along with other loans allegedly sold and transferred pursuant to the terms of a Pool Supplement between JP Morgan Chase and National Collegiate Funding, LLC. (*Id*., pg. 4; JA2919). The subject Pool Supplement states that the loans being sold and conveyed were "set forth on the attached Schedule 1". (*Id*., pg. 10; 2925). Appellees never produced any document with the term "schedule" in it to describe the loans, including Plaintiff's loan, that were allegedly sold and transferred into the Defendant 2007-3 Trust

1, *Id*. Instead, Cognition Financial, f/k/a First Marblehead Corporation ("FMC"), testified that an excel spreadsheet from its database systems titled "Loan Sale Roster" <u>serves</u> as "Schedule 1" to the Pool Supplement for the 2007-3 Trust despite the term "schedule" being absent from the document. *Id.*

There was also an issue of material fact raised by FMC's prior affidavit in support of Defendants' original Summary Judgment Motion that made no reference to any Defendant possessing a "schedule" or "Schedule 1" to the Pool Supplement. (*Id.*, pg. 10, citing ECF 112-2; JA2925). TSI's prior Luke affidavit from Defendants' original Motion did not identify the roster exhibit as Schedule 1 and instead, the affidavit described the Roster as a "printout accurately reflecting **the information contained in a digital Excel file maintained by TSI since the file** was received from Cognition on or about November 14, 2012." (ECF 188-1, pp. 10 – 11; JA2925-JA2926. TSI's affidavit from Luke submitted with the second Summary Judgment Motion revised the testimony to now describe the Roster document as "reflecting" Schedule 1, (*Id*. pg. 11; JA2926).

The source of the Roster's information based on the record is indeterminate and contradictory. TSI's Luke testified at deposition herein that he received computer records of the Trusts' acquisition of loans from FMER or FMC, *Id.* Luke previously testified in another National Trust Collegiate Trust collection action in 2014 that he received computer records of the Trusts' acquisition of loans from an entity known as GSS Data Services, Inc. the administrator of the Trusts. *Id*.

U.S. Bank's testimony supported that the Roster sent by FMER to TSI to allegedly

identify loans owned by the 2007-3 Trust is not Schedule 1 because:

1. All of the information in Schedule 1 is not in the Roster, (ECF 184-1, **Ex. N**, Kaplan Dep., 68:5-10; JA4074.

2. Not all of the information in Schedule 1 is in the Roster, rather FMC technicians excerpted data from Schedule 1 to create the Roster, (*Id.* Kaplan Dep. 69:22 - 70:11; JA4074).

3. There is a Pool Supplement with a schedule attached that identifies the loans that are sold to the NCF [National Collegiate Funding] entity and that under the deposit and sale agreement, those loans are then assigned to [Trust] 2007-3, (*Id.*, Kaplan Dep. 90:2 - 90:15; JA 4080).

(*See also* ECF 188-1, pp. 11-12; JA2926-JA2927).

U.S. Bank also testified that, other than information told to it by TSI, it otherwise has no knowledge of whether the Roster is one of the spreadsheets created to show loans transferred to the Trusts as part of the closing of the securitization of those trusts (*Id*. pg. 12; JA2927).

FMC testified that servicer PHEAA/AES' records reflect which loans are in any given Trust and that FMC's MS Access Database information is simply an historical "snapshot" of the loans allegedly sold to the Trusts based on a "roster" of loan data FMC received from the servicer PHEAA/AES. In contradiction to this, PHEAA/AES testified it does not know how FMC assigned loans to the Trusts but would change the owner's name for loan in its system at FMC's request. *Id*.

FMC also testified:

1. The "Loan Roster" information is not in any original undisturbed state but is instead fungible allowing the data to be supplemented by FMC for tracking purposes. (ECF 184-1, **Ex. K**, Meyer Dep. 52:18 – 53:14; JA3926).

2. It is unfamiliar with servicer PHEAA/AES' recordkeeping practices, including any practices involving preservation of the original loan tapes from which the database is created. (*Id.*, Meyer Dep. 29:1 – 22; JA3920).

3. Although it relies upon the servicer data in the loan tapes for its roster, he admits the servicers do not have access to Schedules 1 and 2 from the Pool Supplements. (*Id.*, Meyer Dep. 40:22 – 41:3; JA3923).

(*Id.* pp. 12-13; JA2926-JA2928).

There are material issues of fact as to whether defendants know they are filing collection lawsuits without sufficient proof of the trusts' ownership of the loans after the 2017 Consent Order Between Defendant TSI and the CFPB. Prior to filing the underlying collection action against Plaintiff, the attorney working at Appellee RLG approximated that he was involved in the filing of dozens of collection actions on behalf of the NCSLT Trusts while at RLG and with prior law firms, (*Id.* pg. 13; JA2928).

RLG filed the Gosse collection action and at least fourteen (14) other NCT actions attaching a Note Disclosure and a Pool Supplement as Exhibits, and prosecutes collections action for various NCSLT trusts and does so in a uniform manner without regard to which

trust is involved, but is not sure if he has ever seen or attached a Schedule 1 to any Pool Agreement in connection with filing a collection action for a NCSLT trust. (ECF 180, pp. 14 at ¶¶ 43-45; JA2828). RLG testified regarding ten other NCSLT collection complaints it filed that showed the Appellant's case was not unique:

1. All attached as exhibits thereto a Pool Supplement and a Note disclosure statement.

2. All of the Pool Supplement exhibits failed to refer to the defendant borrowers' loan(s) in the collection lawsuits.

3. All were defended by preliminary objections to the complaint for failure to show transfer of the debt or ownership of the debt, and therefore no capacity to sue by the trust.

4. All of the preliminary objections were granted, and all the cases were dismissed by the state court without appeal.

(*Id*. pp. 13-14 at ¶46; JA2828-JA2829).

Even after becoming aware of the Consent Order RLG did not recall what changes, if any, were made with regards to bringing collection actions on behalf of the NCSLT Trusts, (ECF 188-1, pg. 15; JA2930).

## II.   **Procedural History**

This putative class action was initiated in the United States Court for the Middle District of Pennsylvania by Appellant Chelsey Gosse on August 14, 2020, on her own behalf and on behalf of all others similarly situated. The operative complaint for this appeal is the First Amended Complaint [6] that added as co-plaintiffs Christopher and Lori Dettore,[7] and named as defendants, the National Collegiate Student Loan Trusts 2007-3 and 2007-4 (the "Trusts"); the debt collector Transworld Systems, Inc. ("TSI"); the Trusts' indenture trustee and special servicer U.S. Bank, N.A. ("U.S. Bank"); and the collection law firm Ratchford Law Group, P.C.(the "RLG"). The complaint set forth class action claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Pennsylvania Dragonetti Act, 42 Pa. C.S. § 8351, *et seq.*, and a related civil conspiracy claim, and state consumer protection laws under the and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq,*, and Pennsylvania's Fair Credit Extension Uniformity Act

---

[6] The original complaint (ECF 1) was filed August 14, 2020. The First Amended Complaint (ECF 44) was filed December 3, 2020, adding the Dettore plaintiffs and the Portnoy Schneck and NCSLT 2007-4 defendants. A corrected version was filed on March 1, 2021, to fix paragraph numbering (ECF 67; JA4). In its May 3, 2022, Order, the District Court noted that "[t]he only difference discerned between the two filings is that the irregular paragraph numbering structure in the first filing was corrected in the second." (ECF 90, at 1 n.2; JA 32). The final dispositive orders reference ECF 67 as the operative complaint. (Docs. 223; JA3466, 224; JA3470).

[7] The Dettore co-plaintiffs, and the defendants associated only with their claims (National Collegiate Student Loan Trust 2007-4 and the Portnoy Schneck law firm), were dismissed from the action by the District Court's Order of May 3, 2022 (ECF 90). The court adopted the Magistrate Judge's recommendation (ECF 82), finding that the Dettores' Dragonetti Act claim was not yet ripe because the underlying state court collection action against them had not terminated in their favor—a prerequisite for such a claim. See 42 Pa. C.S. § 8351(a)(2); (ECF 90, at 2; JA 32).

("FCEUA"), alleging that Appellees prosecuted state court debt collection lawsuits against Plaintiffs without a legitimate factual or legal basis, specifically without proof that the Trusts owned the underlying debts. In Appellant Gosse's case, the state court actions were later involuntarily dismissed by court order.

In early 2021, Appellees filed multiple motions to dismiss. In a Report and Recommendation ("R&R") dated July 13, 2021, Magistrate Judge Martin C. Carlson recommended that Appellant Gosse's FDCPA and Dragonetti Act claims be permitted to proceed but recommended that claims against U.S. Bank be dismissed. (ECF 82). Upon *de novo* review and after considering the parties' objections, the District Court issued an Order on May 3, 2022, that adopted the R&R in part and rejected it in part. (ECF 90; JA32). The Court adopted the recommendation to dismiss the FCEUA claim and the Dettore Plaintiffs' Dragonetti Act claim. The Court also dismissed all claims against Defendant National Collegiate Student Loan Trust 2007-4, thereby terminating its involvement in the action.

Critically, the District Court rejected the Magistrate Judge's recommendation to dismiss Defendant U.S. Bank, finding that Plaintiffs had plausibly alleged theories of indirect and vicarious liability. The Court therefore denied the motions to dismiss as to the surviving claims: Count I (FDCPA), Count III (Ms. Gosse's Dragonetti Act claim), and Count IV (Civil Conspiracy). In doing so, the Court also explicitly rejected Appellees' argument that the claims were barred by Pennsylvania's judicial proceedings privilege. The matter was then remanded to the Magistrate Judge for discovery and

further pretrial management.

Following a period of discovery, Appellees filed their first Summary Judgment Motion, arguing they possessed sufficient evidence of loan ownership and therefore had probable cause to initiate the underlying state court action against Appellant Gosse. (ECF 110; JA37, ECF 113; JA55).[8] This motion prompted a series of discovery disputes. While Appellees sought to stay all further discovery (ECF 114), Appellant contended that discovery was incomplete and moved under Federal Rule of Civil Procedure 56(d) to deny or defer a ruling pending discovery on the central issue of loan ownership (ECF 128; JA1477, ECF 129; JA1490). Contemporaneously, Appellant moved to strike certain evidentiary declarations submitted by Appellees, arguing they were incompetent and lacked foundation. (ECF 126; JA728, ECF 127; JA731). The Magistrate Judge resolved these competing discovery and evidentiary disputes before reaching the merits of the summary judgment motion. He first granted Appellant a targeted 90-day period of discovery relating to the ownership of these loans, while staying general merits discovery. (ECF 136; JA2525). While denying the motion to strike as a separate procedural matter, the court noted that Appellant's evidentiary challenges would be fully considered in the merits analysis. (ECF 135; JA2519).

After discovery, the Appellees subsequently filed Renewed Motions for Summary Judgment, submitting additional chain-of-title documentation that had not

---

[8] The first motion for summary judgment was filed by National Collegiate Student Loan Trust 2007-3 (ECF 110) and later joined by the other defendants. *See* ECF 116; JA84, ECF 117; JA88, and ECF 119; JA94.

been presented previously, and combining it with what was already filed at ECF 110; JA37. (ECF 174; JA2632, 175; JA2636, 178; JA2781). On this renewed motion, the Magistrate Judge issued a second R&R on September 29, 2023, reversing his prior position. He concluded that the newly submitted documents established a good-faith basis for the underlying state court action and recommended that summary judgment be granted to Appellees on the Dragonetti Act and conspiracy claims. (ECF 202; JA 3198).

By order dated February 7, 2025, District Judge Keli M. Neary, to whom the case had been reassigned, adopted the second R&R and granted summary judgment in favor of Appellees. (ECF 223; JA3466). The court found that the "unrebutted chain-of-title documents" defeated Appellant's claims as a matter of law because they established Appellees had a good-faith basis to initiate the state-court proceedings. (ECF 223, at 2; JA3468). Judgment was entered accordingly. (ECF 224; JA3470).

To render the judgment final and appealable, the parties stipulated to the dismissal of Appellant's remaining FDCPA claim. If the ruling on the Dragonetti claim stood, the FDCPA claim was also ended by the ruling's reaonsing. The District Court approved the stipulation and closed the case. (ECF 226; JA3471, 228; JA3484).

Appellant's timely appeal followed.  (ECF 230, JA3487).

## III.     Rulings Presented for Review

Appellant constrains the issues on appeal to the District Court's rulings granting Appellees' Motion for Summary Judgment (ECF 223; JA3466, ECF 224; JA3470). As set forth above, the ruling on the Appellees' motion for summary judgment was limited to Gosse's Dragonetti claim but the same facts were the basis for Gosse's Fair Debt Collection Practices Act and therefore, once the Dragonetti ruling was made, it ended Gosse's FDCPA claim and rather than expend the Court's resources, Gosse agreed it would be covered by the ruling and it was dismissed by agreement. If the Dragonetti ruling is in error, the dismissal of the FDCPA claim should also be vacated.

# SUMMARY OF THE ARGUMENT

As set forth below, the claims asserted in Gosse's amended complaint include claims for violation of the Dragonetti Act, Civil Conspiracy and the FDCPA for Appellees filing a state collection action to try to collect Appellant's student loan despite their knowledge that they lacked proof of ownership of Appellant's loan. This lack of ownership proofs is alleged and the record amassed herein supports that for years prior to Appellant's collection matter based on federal enforcement action against their collector, Appellee Transworld ("TSI"), the litigation practices of Appellees remained systemically reliant upon defective ownership proofs including when they sued Appellant. This was the basis of Appellant's state court objection that she did not owe money to the Trust because the Appellee Trust failed to produce evidence of her loan's ownership through complete assignment documents, including most importantly "Schedule 1" listing the loans allegedly sold in 2007 to the fifteen National Collegiate Loan Trusts ("NCSLT trusts") of which the Appellee Trust is one. Confronted with this objection, Appellees walked away from the collection litigation that sought over $37,000 as the records show it had done in at least fourteen other Pennsylvania state collection actions based on objections or failure to appear at trial.

The record argued below also supports that, Appellees lacking personal knowledge of the transfer of student loans into the NCSLT trusts, relied herein upon the contradictory testimony of third-party affiants to attempt proof of trust loan ownership. This testimony relied upon a document entitled "roster" offered by

Appellees in place of the lost Schedule 1 loan data, but the record shows that third-party testimony further clashed with Appellee testimony on ownership issues and therefore could not verify the roster data's origins or accuracy.

Although a party attempting to prove a Dragonetti Act claim faces a heavy burden, the foregoing record argued below supports that Appellees proceeded without probable cause or with gross negligence in filing the state collection action against Ms. Gosse. Moreover, the same record was a firm basis for the District Court to infer an improper purpose in the collection action's filing because Appellant demonstrated genuine issues of material fact that Appellees' collection action was filed with their knowledge of continuing systemic proof of ownership issues. Instead, the District Court followed the R&R's mischaracterization of the foregoing evidence to cast the Trust walking away from a $37,000 claim as a one off decision instead of viewing it in the context of fourteen other collection actions in this Commonwealth and infer an improper purpose based thereon to avoid accountability for the filings. When there is no provable debt, filing a collection action in order should be deemed an improper purpose subject to penalties provided by the Dragonetti Act. Thus, this Court should reverse summary judgment on the Dragonetti claim and the dismissal of the FDCPA claim based on that ruling.

The interaction between the Appellees has been the subject of prior opinions by this Circuit, *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599 (3d Cir. 2024) and in this Circuit, *Consumer Fin. Prot. Bureau v. Pennsylvania Higher*

*Educ. Assistance Agency*, 2024 WL 4367926 (M.D. Pa. Oct. 1, 2024). A Delaware state court decision also addressed the Trusts. *In re Nat'l Collegiate Student Loan Trusts Litig*., 251 A.3d 116, 174 (Del. Ch. 2020) "The Trusts have no officers or employees, and therefore, act through the Owner Trustee." 2024 WL 4367926, at *2. The "Owner Trustee" is Appellee Wilmington Bank. Id. The Trusts have pledged collateral and issued notes. The note holders' rights are enforced by an "Indenture Trustee". 251 A.3d 116, 174. The Indenture Trustee is Appellee, U.S. Bank. U.S. Bank asserted the right to direct the Trusts until the notes are paid off. 251 A.3d at 174. The Indenture Trustee is a necessary and responsible party since it directs the Trusts.

## ARGUMENT

### I.   Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file showing a genuine issue of material fact for trial. *Id.* at 324. The substantive law determines which facts are material. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then there is a genuine issue of fact. *Id.* When deciding a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.* Nonetheless, a party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. *Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir. 1992).

## II.  A Reasonable Jury Could Find Appellees Lacked Probable Cause and Acted with Gross Negligence in Initiating the Underlying Action.

### A. The Governing Standard: The Elements of the Dragonetti Act and the Contested Issues on Appeal

To prevail on her claim under Pennsylvania's Dragonetti Act, 42 Pa. C.S. § 8351, Appellant must prove that Appellees (1) initiated the underlying state-court action against the Appellant, (2) which terminated in her favor, (3) was brought with gross negligence or without probable cause, and (4) was initiated for an improper purpose. 42 Pa. C.S. § 8351; *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002). As the first two elements—initiation and favorable termination—are not in dispute, this appeal turns on

whether the District Court erred in granting summary judgment on the two contested elements: (1) Appellees' lack of probable cause or gross negligence, and (2) their improper purpose in bringing a collection action against Appellant knowing they had insufficient proofs.

### 1. A Reasonable Jury Could Find Appellees Lacked Probable Cause to file a Collection Action Against Ms. Gosse

Under the Dragonetti Act, the plaintiff must prove the defendant initiated the state court collection lawsuit without probable cause or in a grossly negligent manner. 42 Pa. C.S. § 8354(3). The Dragonetti Act provides a cause of action where a defendant has procured or initiated a civil proceeding "in a grossly negligent manner or without probable cause." 42 Pa. C.S. § 8351(a). Probable cause exists only where a party "reasonably believes in the existence of the facts upon which the claim is based." 42 Pa. C.S. § 8352. Appellees cannot meet this standard. The record shows they initiated the collection suit based on evidence they knew to be contradictory, inadmissible, and systemically unreliable.

Nor can Appellees find shelter in the statute's alternative safe harbors. They cannot claim good faith reliance on the advice of counsel where the public record, including a CFPB Consent Order and investor litigation, shows they were aware of systemic evidentiary defects they could not have fully disclosed. 42 Pa. C.S. § 8352(2). Likewise, Appellee Ratchford Law Group cannot claim it acted in good faith when its pattern of abandoning claims upon challenge supports an inference that its lawsuits were not intended for legitimate adjudication, but as a tactical weapon to coerce payment from unchallenged

debtors. *See* 42 Pa. C.S. § 8352(3). It is well known that many consumer collection cases are resolved by default judgment, not by the filer successfully litigating the action. *See* FTC Report, The Structure and Practices of the Debt Buying Industry (Jan. 2013) at p. 45 ("As the Commission has noted, because 90% or more of consumers sued in these actions do not appear in court to defend,…" ).Because the material facts underlying Appellees' purported probable cause are in direct conflict, the issue was for a jury, not the court, to decide. *See Bannar v. Miller*, 701 A.2d 242, 248 (Pa. Super. Ct. 1997).

### 2. Alternatively, a Reasonable Jury Could Find Appellees Acted with Gross Negligence.

Even if this Court were to find that a genuine factual dispute did not exist as to probable cause, the District Court's grant of summary judgment must be reversed because the record contains overwhelming evidence that Appellees acted with gross negligence. Under the Dragonetti Act, gross negligence provides an independent basis for liability. 42 Pa. C.S. § 8351(a)(1).

Instead, gross negligence is defined as "a lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party …". *Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa. Super. Ct. 2001) (citing Black's Law Dictionary 1057 (7th ed. 1999)). The does not require a showing of actual malice. *Catania v. Hanover Insurance Co.*, 566 A.2d 885, 888 (Pa. Super. Ct. 1989).

### 3. The Record Compels an Inference That Appellees Pursued the Action for an Improper Purpose.

Even a lack of probable cause or a showing of gross negligence in filing a suit is

insufficient for liability unless the Appellees also acted with an improper purpose. 42 Pa. Cons. Stat. Ann. § 8351; *Broadwater v. Sentner*, 725 A.2d 779, 784 (Pa. Super. Ct. 1999). The record here, when viewed in the light most favorable to Appellant, provides overwhelming circumstantial evidence that Appellees' primary purpose was not the legitimate adjudication of a debt, but rather the use of the legal process as a "tactical weapon to coerce a desired result that is not the legitimate object of the process." *Gen. Refractories v. Fireman's Fund Ins.*, 337 F.3d 297 (3d Cir. 2003) (quoting *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1026 (Pa. 1987)).

Pennsylvania law does not require a "confession" to prove that the defendant acted with an improper purpose. *Gentzler v. Atlee*, 660 A.2d 1378, 1385 (Pa. Super. Ct. 1995). Such subjective misconduct can be "inferred from the speciousness of the claim" and "the plaintiff's conduct during litigation." Id.; see also, *Kraft v. Downey*, 68 A.3d 329, 336-37 (Pa. Super. 2013). The record contains ample evidence of both.

First, the "speciousness of the claim" is established by the complete failure of Appellees' proof of ownership, as detailed above. Initiating suit based on a litigation-generated, inadmissible "Roster" in lieu of the essential "Schedule 1" is the definition of a claim filed without justification.

Second, and most telling, is Appellees' "conduct during litigation." When Ms. Gosse merely challenged their standing, Appellees abandoned a $37,000 claim rather than produce competent proof of ownership. This was not an isolated business decision. The record establishes a clear pattern: Appellees abandoned at least fourteen other collection

actions in Pennsylvania alone when confronted with similar challenges to their standing.

This pattern strongly supports an inference that Appellees' business model was not to adjudicate debts on their merits, but to file suits *en masse,* banking on the high probability of default judgments or settlements from unrepresented or less sophisticated debtors. This use of the courts as a tool to extort payment on unprovable claims is a perversion of legal process and the very definition of an improper purpose. The District Court erred by refusing to draw this reasonable inference and by preventing a jury from evaluating Appellees' true purpose.

### B. The District Court Committed Reversible Error by Disregarding Genuine Disputes of Material Fact and Impermissibly Weighing Evidence.

The District Court dismissed Appellant's Dragonetti claim by adopting the Magistrate's R&R, which erroneously concluded there was no "fact-specific" proof of Appellees' wrongdoing. This was a fundamental misapplication of the summary judgment standard. The court committed reversible error by ignoring a mountain of record evidence that creates genuine disputes of material fact as to every contested element of the Dragonetti claim. As demonstrated below, the R&R, and by extension the District Court, disregarded damning evidence of Appellees' prior knowledge, dismissed fatal contradictions in their proof of ownership, and refused to draw reasonable inferences from their litigation conduct.

### 1. The Court Ignored Overwhelming Evidence That Appellees Were on Express Notice of Their Systemic Evidentiary Flaws.

The District Court in adopting the R&R failed to even discuss the most powerful evidence of Appellees' gross negligence: that years before suing Ms. Gosse, they were on express notice of grave, systemic defects in their ability to prove loan ownership. This notice came from multiple sources:

**The 2017 TSI Consent Order:** This public order addressed widespread failures in Appellee TSI's documentation and collection practices on behalf of the Trusts.

**The Assurances with the New York and Massachusetts Attorney Generals:** The assurances addressed the improper use of the rosters and the lack of personal knowledge of affiants.

**The Delaware Court of Chancery Litigation:** Appellees were sued by their own investors over defective representations about the Trusts' loan ownership.

**Systemic Practices:** Appellees filed suit against Ms. Gosse using the same systemically flawed documentation and processes criticized in those actions, without undertaking any diligent, case-specific inquiry.

These record facts, show a conscious disregard in the R&R of the substantial risk that Appellees did not have standing to assert their collection claim against Ms. Gosse and that it therefore *a priori* lacked merit.

> **C. The Court Improperly Resolved Factual Disputes Regarding the Inadmissible "Roster" Offered as Proof of Ownership of Gosse's loan.**

The central factual dispute in this case is whether Appellees could prove ownership of the debt. Their entire claim rested on an unauthenticated spreadsheet (the "Roster") offered in place of the admittedly missing, indispensable "Schedule 1." The record is full of fatal contradictions concerning this document, which the R&R improperly resolved in Appellees' favor.

These contradictions, which should have precluded summary judgment, are stark and irreconcilable. The record shows a circular sourcing for the Roster's data, with Appellees' affiant FMC claiming it received information from servicer PHEAA, while their affiant PHEAA testified it received its information from FMC. This unverifiable loop is further undermined by testimony from Appellee U.S. Bank, which directly questioned the Roster's authenticity. Compounding this issue, Appellees' own affiants admitted to a lack of personal knowledge regarding the creation of the original Schedule 1 and provided shifting, contradictory accounts about how the substitute "Roster" was created.

As the record further shows, Appellees lacked the personal knowledge to correct these standing defects to prove the Trust's loan ownership which could not be overcome due to Schedule 1 no longer existing and third party affiants also lacking personal knowledge of the events surrounding Schedule 1's creation resulting in a fatally contradictory assertions by those affiants as to the creation of the "roster" document in lieu of Schedule 1 relied upon in their collection action against Ms. Gosse.

Appellant also submitted evidence that Appellees did not have a basis for alleging

ownership in the state collection action that included the Appellees abandoned the action despite $37,000 at issue because of Appellant's narrow objection that it did not have standing to sue as owner of the debt. The R&R addressed this as being a one-off decision with no larger context because it assiduously ignores that Appellant demonstrated that these ownership issues were real based on the record evidence that fatal contradictions exist as to the source and integrity of the trust's "roster" records regarding transfer to and ownership of the student loans by the Appellee Trust. Under these circumstances, the District Court failed to infer an improper purpose for the state court collection action based on these material facts. This is particularly true on a motion for summary judgment, when the trial court must draw reasonable inferences in favor of the non-moving party. As such, Appellant raised genuine issues of material fact as to whether Appellees filed the state collection action without justification.

### D. The District Court Erred in Not Finding a Dispute of Material Fact and a Legal Dispute Regarding Hearsay and Admissibility

### 1. Overview of the R&R regarding the Dragonetti Claim

A party cannot prevail on summary judgment by relying on inadmissible evidence. Fed. R. Civ. P. 56(c)(2) requires that facts be supported by citing to materials in the record that would be admissible at trial. As this Court has held, "hearsay statements can [only] be considered on a motion for summary judgment if they are *capable of being admissible at trial*." *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (citing *Stelwagon Mfg. Co. v. Tarmac Roofing Sys.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)).

Despite this, the District Court adopted the R&R with the understanding that there is broadly an ownership dispute regarding the debt but somehow misstates the nature of the dispute. The Appellees submitted testimony in support of their Motions for Summary Judgment that an Excel Spreadsheet, known as a "Roster," is a business record that supports their ownership and right to enforce the student loans replace even though it was created after the fact as a replacement for Schedule 1, referenced in loan assignment contracts as the list of individual loans that were purported to have transferred into specific NCSLT Trusts for investment and collection purposes. In opposition, the Plaintiffs argued that the Roster was classic hearsay: an out-of-court statement offered for the truth of the matter asserted—that Ms. Gosse's loan was transferred to the Trust. This was a genuine material dispute of fact, and yet, the District Court failed to grasp the essential issue of the underlying action, constituting reversible error. Because the court's entire legal analysis was predicated upon the "Final Loan Roster," which fails both as admissible hearsay under Rule 803(b)(6), and as an authenticated document under Rule 901, this Court's *de novo* review requires reversal.

The R&R's confusion is not restricted to the fact record and extends to the law as well that is relevant to this appeal. Repeatedly it characterizes Appellant's Dragonetti claims as involving "abuse of process" which it defines a separate tort but nonetheless conflates with a Dragonetti wrongful use of civil proceedings claim by this characterization. As explored below, this confusion causes it to ignore analysis of the

record facts within the codified components of the Dragonetti Act, addressing gross negligence or without probable cause in bringing a civil action. Additionally, the R&R focuses on facts irrelevant to the legal determination of the issue of standing and its consequent effect on the Dragonetti claim:

> Gosse's abuse of process claims rests upon the thinnest of reeds. At the outset Gosse concedes as she must that she is a delinquent student loan debtor. Therefore, it is undisputed that she owes something to someone.

(ECF 202, R&R, pg. 22; JA3220).

Thus, as argued in Appellant's Objection to the R&R, the R&R's apparent rationale for concluding that the parties agree the Roster is Schedule 1 is its stated belief that Plaintiff's claims ultimately are unworthy of litigation because Plaintiff "she owes something to someone." *Id*. Therefore, there is little to no legal consequence or motivation to closely examine whether the actual Schedule 1 was produced. The Third Circuit Court of Appeals rejected this reasoning in the unpublished opinion, *Browne v. National Collegiate Student Loan Trust,* No. 23-2017 (3rd Cir. August 1, 2023) holding that any person who pays a debt to the wrong person has been damaged:

> The amended complaint therein alleges the Trusts "'cannot show that they are assignees of any particular loan' and that they used 'false or misleading statements in the course of their collection efforts,'", then the plaintiff had alleged "that Browne suffered a monetary injury and that this injury was caused by Appellants' deceitful and misleading collection efforts. Browne has thus alleged '[t]he most obvious' tangible harm, and 'has suffered a concrete injury in fact under Article III.'"

*Browne* at 3 (ECF 203, Pl.'s Brief in Support of Objections to Order of Sep. 29, 2023); JA3237).

## 2. The District Court Abused Its Discretion by Authenticating the Roster When It Ignored Uncontroverted Evidence That the Underlying Source Database Was Irrevocably Lost.

To be admissible under the business records exception, Fed. R. Evid. 803(b)(6), the proponent must establish through a "custodian or another qualified witness" that the record was (A) made at or near the time by someone with knowledge; (B) kept in the course of a regularly conducted activity; and (C) making the record was a regular practice of that activity. Appellees failed to produce a witness who could satisfy *any* of these foundational requirements.

This Court's decision in *United States v. Pelullo*, 964 F.2d 193 (3d Cir. 1992) is dispositive. There, this Court reversed a criminal conviction based on records sponsored by an FBI agent who had seized the documents but had no personal knowledge of how the company created or maintained them. *Id.* at 201. The Court held that to be a "qualified witness," under Rule 803(b)(6), a person must have familiarity with the record-keeping system of the business that created the records. *Id.* A witness who only becomes familiar with documents after they are seized for litigation cannot provide the necessary foundation. Critically, the court emphasized that any alternative foundation, whether from another "qualified witness" or through circumstantial evidence, must still demonstrate that the records were made contemporaneously by someone with knowledge and kept as part of a regular business practice. *Id.* Simply having some indicia of trustworthiness is not enough; the core foundational requirements must be met. *Id.*

A bedrock principle of evidence is that a witness may only testify to matters of which they have personal knowledge. Fed. R. Evid. 602. This principle is embedded in the foundational requirements for authenticating documents and admitting them under the business records exception, both of which require a "qualified witness" or a "witness with knowledge." Fed. R. Evid. 803(b)(6); Fed. R. Evid. 901. The District Court abused its discretion by crediting foundational testimony from witnesses who, by their own sworn declarations and deposition testimony, demonstrably lacked the personal knowledge required to admit the "Final Loan Roster."

Appellees' primary foundational witness, Jens Meyer, provided a declaration that, on its face, disqualifies him from serving as a "qualified witness" for the Trust's records. While he attests to his knowledge of *Cognition's* database, he makes the fatal admission that:

> Cognition[9] is not an existing custodian for the Trust, and therefore is currently under no obligation, contractual or otherwise, to maintain any documents or data on behalf of the Trust.

(FMC ECF 176-1, Meyer Decl. ¶ 5; JA4171) (emphasis added). His admission confirms he has no custodial or legal duty to the entity whose records are at issue. Furthermore, his "knowledge" of the loan's origin is admittedly derivative; he states the data in Cognition's database is "derived directly from loan tapes received" from other entities. (*Id*. ¶ 7; JA4171). He does not, and cannot, claim to have personal knowledge of how those original "loan tapes" were created, whether the data they

---

[9] Cognition is the former incarnation of FMC ECF 176-1 ¶ 3; JA4170.

contained was accurate, or how they were maintained by the original lender or servicer. This is a clear failure to meet the standard for a qualified witness under controlling Third Circuit precedent. *See Pelullo*, 964 F.2d at 201 (a witness must have "familiarity with the record-keeping system" of the business that created the record).

Thus, the District Court erred by adopting the R&R, which relied on declarations from non-parties like FMC and PHEAA to authenticate the critical Roster document as Schedule 1, while simultaneously ignoring the overwhelming weight of Appellant's contrary evidence. This failure to properly weigh the evidence is even more egregious than the authentication issues identified in *Pelullo*, 964 F.2d 193.

Indeed, the R&R's discussion of Appellant's record evidence is confined to just two sentences. One sentence acknowledges the evidence while the other largely dismisses it as insufficient. The court mischaracterizes her explanation for the Roster's unreliability, which his based on the admitted loss of TERI's original, unredacted "Loan Database" as mere speculation:

> While Gosse points to alleged irregularities in TERI's maintenance of loan records after its bankruptcy in 2008 as reason to doubt the authenticity of the defendants' documentary support for their claim that they possessed the right to collect this loan, Gosse does not explain how irregularities that may have taken place after 2008 undermine the slight showing necessary to authenticate documents produced in September of 2007. Instead, Gosse simply invites us to speculate that such irregularities exist.

(ECF 202, R&R, pg. 24; JA3221).

The court's conclusion that Appellant merely "invites speculation" disregards the

concrete evidence presented. Appellant proffered sworn testimony from the TERI bankruptcy proceeding itself, where counsel for First Marblehead—the entity that acquired TERI's assets—admitted to the court that "TERI did not maintain its database. It was not stored anywhere that we're aware of…" and that the unredacted "loan data base… was not transferred to the First Marblehead entities." (ECF 180, CSMF ¶ 14; JA2820, see also Ex. I; JA3684).

This admission is not speculation; it is direct evidence from the Appellees' predecessor in interest that the foundational document necessary to establish the loan's chain of custody is irrevocably lost. By ignoring this dispositive evidence, the District Court failed to view the record in the light most favorable to the Appellant and improperly resolved a genuine dispute of material fact concerning the Roster's authenticity.

**3. The District Court Abused Its Discretion by Admitting the Roster as a Business Record Where Appellees Failed to Authenticate Its Origin or Establish Its Reliability**

The District Court's error in authenticating the Roster is not an isolated issue; it is the predicate flaw that renders its subsequent business records analysis legally untenable. Because a document's admissibility as a business record under Federal Rule of Evidence 803(b)(6) is entirely dependent on a proper foundation establishing its creation and reliability, the court's failure to demand such a foundation fatally undermines its entire hearsay analysis. Having accepted an unauthenticated document, the court inevitably erred in concluding it could satisfy the stringent requirements of

the business records exception while wholly ignoring Appellant's arguments to the contrary.

The foundational testimony for the Roster is fatally undermined by a direct and irreconcilable contradiction, which precludes its admission as a business record under Federal Rule of Evidence 803(b)(6). While FMC testified that the Roster was derived from "loan tapes" it obtained from its loan servicer, PHEAA, (ECF 180, CSMF ¶¶ 36 – 37; JA2827, see also ECF 184-1 at 25:1-5; JA3919) PHEAA's own sworn testimony establishes the opposite: that it received its NCSLT loan information *from FMC*. (ECF No. 176-4, Wilbert Declaration. ¶ 12; JA5071. Appellees offer no explanation for this circular and self-defeating account of the Roster's origins.

This contradiction is not a mere technicality; it makes it impossible for Appellees to satisfy the bedrock requirements of the business records exception. To qualify, a proponent must demonstrate the record was made by, or from information transmitted by, a person with knowledge who was under a business duty to report it accurately. *See* Fed. R. Evid. 803(b)(6)(A)-(C). And for this category of computer records raises additional authenticity issues. In *Lorraine v. Markel Am. Ins. Co.,* the Court noted:

> [E]lectronic documents or records that are merely stored in a computer raise no computer-specific authentication issues. If a computer processes data rather than merely storing it, authentication issues may arise. The need for authentication and an explanation of the computer's processing will depend on the complexity and novelty of the computer processing. There are many states in the development of computer data where error can be introduced, which can adversely affect the accuracy and reliability of the output. Inaccurate results occur most often because of bad or incomplete data inputting, but can also happen when defective software programs are used or stored-data media become corrupted or damaged.

241 F.R.D. 543, 543 (D. Md. 2007) (quoting *Weinstein's Federal Evidence*, § 900.06[3]). Here, Appellees cannot even identify which entity created the underlying data, let alone establish the source's reliability. This failure is compounded by FMC's admission that PHEAA never possessed the original loan Schedules. ECF 180, CSMF ¶ 37; JA2827; see also ECF 184-1, Ex. K, 40:22 – 41:3; JA3923. This failure, compounded by FMC's admission that PHEAA never possessed the original loan Schedules (*Id.*), demonstrates a profound "lack of trustworthiness" that serves as an independent bar to the Roster's admission. Fed. R. Evid. 803(b)(6)(E).

Appellees' attempt to lay a foundation for the Roster also fails because its purported source, the loan tapes allegedly provided by servicer PHEAA, is entirely unsubstantiated by record evidence. The proponent of a business record bears the burden of establishing its provenance, a burden Appellees have not met. There is no testimony or documentation establishing the existence, creation, or regular maintenance of these alleged loan tapes. Indeed, the record affirmatively refutes the claim that PHEAA possessed such data. The governing Amended and Restated Servicing Agreement contractually limits PHEAA's custodial duties to "all Original Credit agreement and related documents." (ECF 176-4, Wilbert Declaration, Ex. 1 thereto at ¶ 4.04, Ex. 1 at p. 16 of 94; JA5083). The agreement makes no mention of loan tapes or electronic databases, confirming that FMC's foundational claim is contradicted by the parties' own controlling instrument.

Furthermore, even if PHEAA had possessed this data, any resulting document would

be inadmissible for lack of trustworthiness under Federal Rule of Evidence 803(b)(6)(E). PHEAA's own witness admitted that PHEAA does not verify the accuracy of the loan information it receives. (ECF 184-1, Wilbert Dep., Ex. F at 61:21 – 62:19; JA3594-JA3595). No witness could reconcile this impossible data trail. This fatal break in the chain of custody means the document cannot be authenticated under Fed. R. Evid. 901. Moreover, Appellees' own foundational witness, Jens Meyer, swore under penalty of perjury that his company, Cognition, "is not an existing custodian for the Trust." (ECF 184-1, Ex. K, Meyer Dep. 20:6 – 21; JA3918). A record generated from an unverified source by an entity with no duty to ensure its accuracy cannot satisfy the reliability predicates of the business records exception. *See, e.g., United States v. Blake*, 488 F.2d 101, 105 (5th Cir. 1973) (excluding records where the witness had no knowledge of their preparation and could not vouch for their accuracy).

Appellees cannot cure these fatal foundational deficiencies with conclusory affidavits. They have proffered an unauthenticated spreadsheet in lieu of the contractually required Schedule I to the Pool Supplement, and the District Court erred by accepting it without the detailed information necessary for a Court to determine its authenticity and reliability. Thus, the record clearly shows that the "Roster" fails the Foundational Requirements of the Business Records Exception, Fed. R. Evid. 803(b)(6) and Fed. R Evid. 901.

The Roster is inadmissible hearsay for the independent and dispositive reason that it is a document created for litigation, not a record kept in the ordinary course of business.

Appellees' own witnesses supplied the fatal admissions. FMC's testimony that the Roster "*would serve as* Schedule I" and TSI's testimony that the Roster is a document "reflecting" Schedule I are explicit acknowledgments that the Roster Excel spreadsheet is a post-hoc substitute, not the actual contemporaneous business record itself.

The District Court erred by abdicating its gatekeeping function when this is precisely the type of document the Supreme Court held to be inadmissible in *Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943), because its primary purpose is "in litigating, not in business." A document prepared with an eye toward litigation lacks the inherent reliability that animates the business records exception. *See AAMCO Transmissions, Inc. v. Baker*, 591 F. Supp. 2d 788, 794 (E.D. Pa. 2008) (records prepared in anticipation of litigation are not made in the ordinary course of business).

This error is particularly egregious at summary judgment. Rather than viewing the evidence in the light most favorable to Appellant and recognizing a triable issue of fact regarding the Roster's origin and reliability, the court weighed the evidence, credited Appellees' version, and used that inadmissible document as the sole basis for granting judgment. Because summary judgment was predicated entirely on evidence that should have been excluded—or at a minimum, recognized as the subject of a genuine factual dispute—the decision cannot stand.

> **4.  A reasonable jury could find Appellees acted without Probable Cause or with Gross Negligence to establish liability under the Dragonetti Act**

The Court failed to adequately consider whether Appellees were grossly negligent

or lacked probable cause, instead finding only that filing a state collection action to collect a debt could not be an improper purpose. Gross negligence does not require a finding of malice or improper purpose, only a failure to exercise even slight diligence. *Catania v. Hanover Insurance Co*., 566 A.2d 885, 888 (Pa. Super. Ct. 1989). Thus, the Court ignored the record showing Appellees were on express notice of systemic flaws in their ability to prove loan ownership based on:

- The 2017 CFPB Consent Order put Appellees on notice of widespread, systemic failures in their documentation and collection practices.

- The Attorney General Assurances that raised the use of the roster and affidavits that improperly claimed personal knowledge.

- The Delaware Court of Chancery litigation, brought by their own investors, further established that Appellees knew their representations about loan ownership were suspect.

- Filing suit against Ms. Gosse using the same systemically flawed documentation including affidavit not based on personal knowledge, without a diligent, case-specific inquiry, constitutes a conscious disregard of the substantial risk that their claim lacked merit.

The question of gross negligence by the state court collection action's filing is thus an issue a jury must be allowed to decide.

5. **The R&R Should have Inferred an Improper Purpose under the Dragonetti Act.**

An improper purpose may be inferred where the underlying action was filed without justification. *Gentzler v. Atlee*, 660 A.2d 1378, 1385 (Pa. Super. Ct. 1995).; *see also, Kraft v. Downey*, 68 A.3d 3, 336-37 (Pa. Super. 2013) ("subjective misconduct may also be inferred from the speciousness of the claim, the plaintiff's conduct during litigation, or evidence that the plaintiff made the claim for an improper purpose"). And, under Pennsylvania law, a plaintiff in a wrongful use of civil proceedings action need not produce a "confession" to prove that the defendant acted with an improper purpose. *Gentzler,* 660 A.2d at 1385. Here, Appellees' conduct was telling. When Ms. Gosse challenged their standing to bring a lawsuit in the state court, the Appellees walked away from a $37,000 claim rather than produce competent proof of ownership.

Here, the genuine issue of material fact was not whether Appellees were merely mistaken as to the facts giving rise to the collection action, but whether they knew they could never prove ownership of the debt if challenged on this point and proceeded anyhow hoping no challenge would be presented by financially strapped debtors. Appellees perverted the collection process by instituting an action against Appellant that Appellees knew they could not prove just as if Appellees were impersonated the owner of a debt by saying they were ABC company when they were not. If Appellees were merely mistaken, that would present a different set of facts than the instant action. Instead, the record shows that the state collection action against Appellant is not an isolated instance of Appellees' conduct and is instead one consistent with fourteen other collection actions in this Commonwealth where an adverse result, mostly on preliminary objections, was not appealed as the record

in this action reflects. This conduct reflects that Appellees knew that they were continuing to file collection actions without proof of ownership despite promises made to the CFPB in the 2017 Consent Agreement that they would discontinue such practices. Indeed, Appellees' failure to abide with the Consent Agreement's terms by collecting against borrowers like Appellant is evidence of its endemic and systemic collection practice failures memorialized in that Consent Agreement. Under the settlement's Consent Order terms, TSI promised to desist from and improve its servicing practices including consenting to "Requirements for Accuracy and Verification of Borrower's Account Information".

Thus, the District Court should have inferred an improper purpose based on the R&R's failure to reckon with the record evidence. *See, Broadwater*, 725 A.2d at 784 (an improper purpose may be inferred where the underlying action was filed or maintained without justification); *see also, U.S. Bank, N.A. v. Rosenberg*, 2013 U.S. Dist. LEXIS 178705, \*16, Civ. Act. No. 12-723 (E.D. Pa. December 20, 2013) (summary judgment denied on Dragonetti Act claim as to both parties where on one hand, confession of judgment itself supported inference of a proper purpose to recover amount owed, and on the other hand, evidence demonstrated that bank pursued the action abusively and to harass); *Brown v. Halpern*, 2018 PA Super 320, 2018 Pa. Super. LEXIS 1268 (Pa. Super. Ct. 2018)(jury reasonably could find a lack of reasonable belief and lack of full disclosure to counsel based on evidence that some allegations supporting the underlying lawsuit were false).

Moreover, if this Court affirms the District Court's interpretation, Appellees would be able to initiate without reproach more baseless collection actions despite gross negligence or lack of probable cause. Such a result is a perversion of the collection process. *See, e.g., Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila.*, 397 Pa. 274, 154 A.2d 585, 587 (Pa. 1959) (A "perversion" of legal process occurs when a party uses the process primarily to accomplish a purpose for which the process was not designed.); *cf., Winner Logistics, Inc. v. Labor & Logistics, Inc.*, 23 Pa. D. & C.5th 463, 2011 Phila. Ct. Com. Pl. LEXIS 67 (Pa. C.P. Mar. 25, 2011), aff'd, 40 A.3d 204, 2011 Pa. Super. LEXIS 5954 (Pa. Super. Ct. 2011), aff'd, 40 A.3d 204, 2011 Pa. Super. LEXIS 5913 (Pa. Super. Ct. 2011) (jury determined at trial that the underlying lawsuit was not instituted for an improper purpose); *Clemens v. West Milton State Bank (In re Clemens)*, 197 B.R. 779, 794-795, 1996 Bankr. LEXIS 761, *43-44 (M.D. Pa. 1996) (no improper purpose where bank was merely attempting to recover an *undisputed* debt owed to it, the exact purpose for which a foreclosure would be intended)(citing *Dietrich Industries, Inc. v. Abrams*, 309 Pa. Super. 202, 211, 455 A.2d 119, 124 (1982)); *see also, Schwartz v. OneWest Bank, FSB*, 614 Fed. Appx. 80, 84 (3d Cir. June 5, 2015) (allegations of incorrect facts are not enough to demonstrate an improper purpose).

Thus, this Court must reverse summary judgment against Appellant.

### E. The District Court Erred by Dismissing Appellant's Conspiracy Claims

Because the District Court could have found that the record herein of Appellees'

conduct supported the Dragonetti Act claim on the basis of conduct by Appellees that they

wrongfully suing debtors like Appellant knowing they could not prove ownership of the

debt, this would support Appellant's conspiracy claims as well.

### F. The Dismissal of the FDCPA Claim Should Be Vacated.

The District Court's ruling on the Dragonetti claim affected Gosse's FDCPA claim.

In light of the Dragonetti ruling, the parties agreed that the FDCPA claim should also be

dismissed. If the Dragonetti ruling is reversed, the FDCPA claim should also be allowed

to go forward.  Conclusion

For the foregoing reasons, Appellant request this Court reverse the District Court's

rulings in favor of Appellees on Appellant' Dragonetti Act and revive the other claims

that were affected by the ruling, the Conspiracy and FDCPA claims, and remand to the

District Court for further proceedings.

RESPECTFULLY SUBMITTED,


/s/Robert P. Cocco
Robert P. Cocco, Esq.
Robert P. Cocco, P.C.
Attorney I.D. No. 61907
1500 Walnut St., Ste. 900
Philadelphia, PA  19102
(215) 351-0200
bob.cocco@phillyconsumerlaw.com

Christina L Henry, Esq.
Henry & DeGraaff, P.S.
119 1
 Ave., Ste. 500

Seattle, Washington, 98104
Tel 206/330-0595
Fax 206-400-7609
chenry@HDM-legal.com
Admitted Pro Hac Vice

Scott C. Borison, Esq.
1900 S. Norfolk St. Suite 350
San Mateo CA 94403
Scott@borisonfirm.com
301-620-1016
Fax (301) 620-1018
Admitted Pro Hac Vice

Dated: July 15, 2025                COUNSEL FOR APPELLANT

## COMBINED CERTIFICATES OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(g)(1). This brief contains 10,840 words. In preparing this certification, I relied on the word count of the word processing system used to prepare the brief.

I am a member of the Third Circuit bar.

The text of the electronic format of this Application is identical to the hard copy format.

A virus detection program (Webroot) was (automatically) run and no viruses were detected.

Dated: July 15, 2025

RESPECTFULLY SUBMITTED,

/s/Robert P. Cocco
Robert P. Cocco, Esq.
Robert P. Cocco, P.C.
Attorney I.D. No. 61907
1500 Walnut St., Ste. 900
Philadelphia, PA 19102
(215) 351-0200
bob.cocco@phillyconsumerlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that a copy of Appellants' Brief was filed and served on all counsel of record on July 15, 2025 via the Court's CM/ECF System.


Dated:  July 15, 2025

RESPECTFULLY SUBMITTED,


/s/Robert P. Cocco
Robert P. Cocco, Esq.
Robert P. Cocco, P.C.
Attorney I.D. No. 61907
1500 Walnut St., Ste. 900
Philadelphia, PA  19102
(215) 351-0200
bob.cocco@phillyconsumerlaw.com